## S03A1304. McKEE v. THE STATE.

(591 SE2d 814)

HUNSTEIN, Justice.

Hakim McKee was sentenced to life imprisonment for felony murder in the shooting death of innocent bystander Vanessa Kasey. He appeals from the denial of his motion for new trial.[1] For the reasons that follow, we affirm.

1. The jury was authorized to find that McKee was involved in an on-going dispute with Takeevius Thornton. During the course of the dispute, the two men fought, Thornton's room was ransacked and Thornton was fired upon as he drove past McKee on Wellington Street. Approximately two weeks after this shooting incident, on April 18, 2000, Thornton was again on Wellington Street, on foot, when he saw McKee exit a car. Thornton picked up a brick, but did not use it when he saw that McKee was armed with a pistol. Instead, Thornton threw the brick at the car McKee had exited. The car then turned around, nearly hit Thornton and picked up McKee. McKee's car turned out of Wellington but soon returned and shots were fired. Shell casings were found in locations consistent with having been ejected by a gun fired from the passenger window of the car. The car's driver, Rickey Brown, testified that when he stopped the car, McKee

---

[1] The crimes occurred on April 18, 2000. McKee was indicted August 31, 2001 in Fulton County on charges of malice murder, felony murder and aggravated assault. He was acquitted of malice murder and found guilty of felony murder and aggravated assault on January 15, 2002 and was sentenced the next day to life imprisonment. His motion for new trial, filed January 17, 2002 and amended February 13, 2003, was denied February 27, 2003. A notice of appeal was filed March 7, 2003. The appeal was docketed May 20, 2003 and was submitted for decision on the briefs.

exited armed with a .380 handgun and stated that "I shot at them . . . ." Vanessa Kasey, an innocent bystander walking down Wellington, was shot in the chest with a .380 bullet and died from her wound.

This evidence was sufficient to enable a rational trier of fact to find McKee guilty beyond a reasonable doubt of felony murder predicated upon aggravated assault with a deadly weapon. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The transcript reveals that the charges on similar transaction evidence given by the trial court were consistent with the requested charge on that topic submitted by McKee. Accordingly, McKee cannot now complain of any error in the charges regarding the standard of proof to be applied to similar transaction evidence. *Scott v. State*, 274 Ga. 476 (5) (554 SE2d 488) (2001). Although McKee now contends that the standard of proof for similar transaction evidence should be beyond a reasonable doubt, that issue was decided adversely to McKee in *Freeman v. State*, 268 Ga. 185 (4) (486 SE2d 348) (1997).

3. Pursuant to *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), a hearing was conducted to determine the admissibility of the similar transaction evidence the State sought to introduce. The State proffered Thornton's intended testimony; however, the trial court reserved its ruling until trial, at which time the court heard Thornton, outside the presence of the jury, personally testify about the events constituting the similar transaction evidence. The trial court determined that the State's evidence met the standard of proof necessary for the admission of the similar transaction evidence. Based on our review of the record, the trial court's finding was not clearly erroneous and thus will not be disturbed on appeal. See *Smith v. State*, 273 Ga. 356 (2) (541 SE2d 362) (2001).

4. The trial court gave the jury the modified *Allen* charge set forth in the Suggested Pattern Jury Instructions, Vol. II, Criminal Cases.[2] Contrary to McKee's argument, we conclude that the charge given comports with our holding in *Romine v. State*, 256 Ga. 521 (1) (350 SE2d 446) (1986).

5. The jury resumed deliberations after hearing the trial court's modified *Allen* charge and subsequently returned a verdict finding McKee guilty of felony murder and aggravated assault. During the poll of the jury, however, one juror answered "I don't know" when asked whether the verdict was freely and voluntarily made. The trial court then informed the jury that "we need to have a verdict which is

---

[2] The trial court gave the charge from the second edition of the Suggested Pattern Jury Charges, Part 5 (J), which is virtually identical to the charge set forth in the third edition. 1.70.70.

unanimous for all twelve of you. And let me ask that you return to the jury room and resume your deliberations." McKee moved for a mistrial, contending that any verdict returned would be coerced given the length of deliberations and the circumstances revealed by the polling. The trial court denied the motion. The jury later returned a verdict, again finding McKee guilty of felony murder and aggravated assault. The jury was polled and all the jurors affirmatively acknowledged that the verdict was their own and freely and voluntarily made. The trial court noted for the record that it paid particular attention to the response made by juror Baugh, who had originally expressed doubts about her verdict, and that the court was "satisfied that she answered in the affirmative because that was what her verdict was."[3]

McKee contends that his motion for mistrial should have been granted for the reasons set forth in *Howard v. State*, 218 Ga. App. 346 (1) (461 SE2d 274) (1995). We do not agree. The transcript in this case reveals a situation clearly distinguishable from *Howard*, given the absence here of the repeated comments made to the *Howard* jury that led the jury to believe it was required to reach a verdict.[4] Also unlike *Howard*, the jury here was earlier given a modified *Allen* charge and thus the jurors already knew that they were not required to surrender their opinion to reach a verdict. Compare id. at 349 ("[w]ith no instruction in the nature of an *Allen* charge, it is highly probable these jurors believed they had no choice but to acquiesce in the conclusions of their fellows").

As to the other ground asserted by McKee, we find no abuse of the trial court's discretion in concluding that a mistrial was not warranted where the jury had deliberated only one and a half days.[5] *Cofield v. State*, 247 Ga. 98 (8) (274 SE2d 530) (1981).

6. McKee contends he received ineffective assistance of trial counsel. In order to prevail on this claim, McKee must show that the actions of his attorney were deficient and that there is a reasonable probability that the deficient conduct caused him actual prejudice. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985).

(a) McKee contends counsel's performance was deficient based on counsel's failure to request a charge on involuntary manslaughter. Counsel testified at the motion for new trial that he deliberately chose not to request charges on lesser included offenses such as invol-

---

[3] Defense counsel noted for the record that he thought Baugh's response was "shaky."

[4] E.g., the trial court in *Howard*, supra, told the jury, "we're not going to mistry this case" and "it's with you, and that's all there is to it."

[5] The trial court noted that the jury had deliberated from 12:20 p.m. to 4:40 p.m. the first day and from 9:25 a.m. until reaching a verdict at 5:00 p.m., including lunch breaks.

untary manslaughter that would conflict with the "all or nothing" defense strategy that he, after consultation with McKee, had decided to pursue.[6] Because counsel's decision not to request the charge was a reasonable one in light of this defense strategy, counsel's performance cannot be deemed deficient. *Harris v. State*, 274 Ga. 774 (3) (560 SE2d 642) (2002).

(b) McKee next asserts that his attorney was ineffective for requesting a charge on criminal negligence. The transcript reveals that the State also requested such a charge and the trial court granted the State's request. McKee thus cannot establish how he was prejudiced by the requested charge.[7]

(c) Trial counsel testified that he elicited evidence regarding McKee's use and purchase of illegal drugs and his presence in a known drug area in order to explain why McKee was in the car with Rickey Brown, the witness the defense contended was the actual shooter and whose credibility counsel sought to undermine because of his drug dealing and criminal history. The trial court found that this was a reasonable and valid trial strategy counsel made after consultation with his client. We agree with the trial court that McKee has failed to show that counsel's strategy here fell below an objective standard of reasonableness. *Strickland*, supra.

7. We need not address whether McKee established a prima facie showing of discrimination when challenging the State's use of its peremptory jury strikes because we agree with the trial court that the State gave a race-neutral explanation for its strike of venireperson Kelsey. One of several reasons the State gave for striking Kelsey was that she had stated on voir dire that difficulties associated with childcare arrangements would create a hardship for her. This is a legitimate, race-neutral basis for the exercise of a jury strike. *Freeman v. State*, 268 Ga. 181 (1) (486 SE2d 161) (1997). Contrary to McKee's arguments, the transcript reflects that Kelsey was the only venireperson who was the primary caregiver of an infant child who lacked established alternate daycare arrangements. See id.

8. The State challenged McKee's peremptory jury strikes pursuant to *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33)

---

[6] The transcript reveals that counsel vigorously pursued this strategy at trial as he attempted to persuade the jury that Rickey Brown was the shooter and that Brown operated independently of McKee.

[7] To the extent McKee may have raised in his argument on appeal the failure of trial counsel to object to the giving of the charge on criminal negligence, he cannot show he was prejudiced by the charge given the overwhelming evidence of McKee's criminal intent to shoot Thornton and the absence of any instruction to the jury that criminal negligence could substitute for criminal intent in the commission of an aggravated assault. See *Mize v. State*, 277 Ga. 148 (2) (586 SE2d 648) (2003). Compare *Dunagan v. State*, 269 Ga. 590 (2) (502 SE2d 726) (1998).

(1992). The trial court found that the State made a prima facie showing of racial discrimination, which McKee does not contest, and thereafter accepted all of the defense's explanations for its strikes except the one provided for venireperson Bomboy. Defense counsel asserted that he struck Bomboy because she was the victim of a previous crime who could not remember the details of the crime, which indicated she could not pay proper attention to the trial. The State pointed out correctly that the defense had not struck several other venirepersons who were crime victims and that Bomboy's inability to remember details of a prior crime did not indicate any inability to serve as a juror in the case.

> The opponent of the strikes may carry his burden of persuasion by showing that similarly situated jurors of another race were not struck or that the proponent's race-neutral reason for a strike is "so implausible or fantastic that it renders the explanation pretextual."

(Footnote omitted.) *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998). The trial court here determined, under the totality of the circumstances, that the State had shown that McKee was motivated by discriminatory intent in the exercise of this strike. This finding is entitled to great deference and must be affirmed absent clear error. Id. Based on our review of the transcript, we find no merit in McKee's argument that the trial court erred by reseating juror Bomboy.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 12, 2004 —
RECONSIDERATION DENIED FEBRUARY 13, 2004.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.